[No. 7232.   Decided July 16, 1908.]

DANIEL A. MORRISON, *Appellant*, v. JOHN WILLIAMS *et al.*, *Respondents.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—RAILROADS—OPERA-TION—DEFECTIVE CONDITION OF SWITCH YARD—EVIDENCE—SUFFICIENCY. An experienced railway switchman, who has worked thirteen days in an unfinished yard then in course of construction, assumes the risk, and a nonsuit is properly granted, where he was riding on the foot-board and could see a considerable distance ahead and could signal the locomotive to stop at any time, that earth was piled alongside the tracks for surfacing, and that the footboard caught on such earth causing a derailment and resulting in his injury, the conditions be-ing open and apparent.

Appeal from a judgment of the superior court for King county, Rigg, J., entered August 22, 1907, in favor of the defendants, upon sustaining a challenge to the sufficiency of the evidence, in an action for personal injuries sustained by a switchman through the derailment of a railway engine. Affirmed.

*John E. Humphries* and *Geo. B. Cole*, for appellant.

*L. C. Gilman* and *B. O. Graham*, for respondents.

HADLEY, C. J.—This is an action to recover damages for personal injuries. A challenge to the sufficiency of the evidence to authorize any verdict for the plaintiff was sustained at the close of the testimony, and judgment was entered for the defendants. Plaintiff has appealed.

The appellant was a switchman in the employ of the respondent the Great Northern Railway Company, and at the time of his injury was engaged in the switching service in the Seattle yards of said company. The respondent Williams was at the time a general switch foreman of the railway company. Appellant was thirty-six years of age, and had been a switchman for nine years. He had been working for the re-

[1] Reported in 96 Pac. 691.

spondent railway company at that place for thirteen days. The company's yards were at that time in course of construction, and were in an uncompleted condition. Ties and rails were being placed and earth was being brought in for the purpose of surfacing, which was placed alongside the track awaiting its distribution. While the tracks were in this incomplete condition, they were being used for transfer purposes, and their condition and the presence of the earth on the sides thereof were plainly apparent and were well known to the appellant. While one of the tracks was in this condition, a switch engine went upon it. Appellant was riding on the footboard in front of the engine, and he could see a considerable distance ahead. He was riding on the left-hand side and the engine was proceeding slowly. He could have given a signal to stop it at any time, and his signal would have been obeyed. While the engine was proceeding in this manner, the footboard caught in the earth piled alongside the track, resulting in a derailment, and the appellant's foot was caught between the ties and the footboard. The injury was not serious, and appellant had largely recovered at the time of the trial.

The above facts were clearly shown by the evidence and there is no dispute about them. We think that appellant, as a man of years of railway experience, having full knowledge of the unfinished condition of the tracks and of the general peculiarities of the situation where he was working, assumed the risk of any injury that might result from the open and apparent situation. The rule as to assumption of the risk applies generally to those employees having actual knowledge of an open and defective condition of a railway track, and is stated as follows in vol. 4, § 4793, Thompson's Commentaries on the Law of Negligence:

"If a railroad employee knows that the general condition of the track is defective in certain particulars, but nevertheless continues in the employment, he assumes the risk of in-

6—50 WASH.

jury from all defects of that nature, whether specially known to him or not. This is especially true with respect to an employee who is charged with the duty of looking after the reparation of the roadbed, and who knows of its defective condition. Outside of this, the employees below named have been held to assume the risk of injury from the danger stated in each case: A railway-switchman, the risk of injury from worn rails used in side-tracks, of which he has knowledge; an engineer and conductor of a construction-train, who knows the manner in which a trestle is constructed and that there is an unprecedented flood, but who nevertheless attempts, without compulsion or necessity, to drive his train across the bridge; a railway-engineer who knows and understands the liability of the engines used by the company to scatter fire, and who is acquainted with the character and extent of a watch kept upon a wooden bridge forming a part of the roadway, the risk of injuries due to the burning of the bridge by sparks escaping from a locomotive; a locomotive-engineer who knows that there are no track-walkers or night-watchmen on a bridge over which he is obliged to drive his train, the risk of a disaster in consequence of their absence."

It is also stated, in § 4794 of the same volume, that there is an obvious distinction between the extent of the assumption of the risk by the railway employee in the case of a track which has been completed and is open for public service, and one which is known to the employee to be undergoing construction or reparation. Of course, in the latter case the extent of the risk assumed is greater. Such was the appellant's situation, and we do not think the court erred in granting the challenge to the evidence.

The judgment is affirmed.

FULLERTON, RUDKIN, and CROW, JJ., concur.

MOUNT and ROOT, JJ., took no part.